48 So.2d 72

**MORRISON v. DEPARTMENT OF INDUSTRIAL RELATIONS.**

8 Div. 892.

Court of Appeals of Alabama.
Oct. 3, 1950.

Douglas C. Martinson, of Huntsville, for appellant.

J. Eugene Foster and O. J. Goodwyn, of Montgomery, for appellee, Department of Industrial Relations.

Carl A. Morring, Jr., of Huntsville, for employer Huntsville Mfg. Co.

HARWOOD, Judge.

This appellant having received an adverse adjudication from the Board of Appeals of the Department of Industrial Relations on her claim for unemployment compensation perfected her appeal to the Circuit Court of Madison County. After hearing the evidence the circuit court found that "appellant (claimant) has failed to meet the burden which was upon her to show to the reasonable satisfaction of the court that she had a good cause connected with her work for leaving her employment, and she is disqualified under Subsection B of Section 214 of Title 26 of the Code of Alabama from receiving benefits, and finds the issues in favor of the appellee (defendant)."

The court taxed the costs against the claimant.

Claimant then perfected her appeal to this court. .

In the court below it was stipulated that the appellant met the basic eligibility requirements for unemployment compensation, and amount of her benefits were agreed upon, if she was qualified for benefits under Section 214, subd. B, supra.

The appellant's own testimony shows that she is 48 years of age, and for many years had been employed in the textile industry. In September, 1947, she was employed by the Huntsville Manufacturing Company as a spinner, and continued in such employment until April 3, 1948.

More than ten other spinners working with the appellant were assigned the same tasks as the appellant. She was not discriminated against in this regard.

Appellant worked eight hours per day. According to her she would sometimes not get an opportunity to leave her work even to get a drink of water. Her witness, John J. Turner, her former supervisor, testified that no regular rest periods were allotted on this type of work, but spinners could take time off when the job caught up, or they could take time off and let the job go down.

Appellant testified that while she did not know the temperature in the spinning room, "it was pretty hot in there." Her witness Turner testified that the room had a humidifying system and the normal temperature was around 80 or 85 degrees, and probably a little warmer in the summer. Appellant's period of employment was in the fall, winter, and spring months.

Appellant testified that she lost about thirty pounds during her employment, and in April she quit her job because she was worked down. She at no time consulted a doctor, because she was not sick.

Appellant testified that she had had explained to her at the time of her employment the company rules as to leaves of absence, and was familiar with them. She knew that if she left her job for three days without notifying the company that she would be deemed to have severed her employment.

Appellant had on two prior occasions obtained leaves of absence because of illness, and stated "I could have got a leave of absence if I reported and was sick, but I tell you I wasn't sick. The work was just too hard for me and I couldn't hold up to run it."

The appellant did not know of any of the other spinners, who did the same work as appellant, quitting work at the time she did.

When appellant left her job in April she did not then, or at any subsequent time notify the company she was quitting. Several months later she resumed work in another textile mill in Huntsville.

The evidence is conclusive that appellant left her job voluntarily. Under Section 214 (B), supra, an individual is disqualified from benefits under the Unemployment Compensation Law if he leaves his work voluntarily without good cause connected with such work. The burden is upon the claimant to establish that he had good cause, and its connection and relation with his work. Henderson v. De-

partment of Industrial Relations, 252 Ala. 239, 40 So.2d 629.

It would indeed require speculation and surmise under even the claimant's own testimony to conclude that her infirmity resulted from the character of work she was performing. She testified that she lost 30 pounds weight. She did not consult a doctor, because, as she repeatedly stated, she was not sick, but only worked down. She did not apply for any leave, nor did she at any time notify the company she was quitting.

We think the evidence fully justifies the lower court's conclusions as to the insufficiency of the evidence to support appellant's claims of qualification for benefits. Appellant's assignment of error asserting that the judgment of the lower court is contrary to the great weight of the evidence is therefore without merit.

The only other error assigned by appellant is that the lower court erred in taxing the costs of this suit against the claimant.

Article 5, Sections 217 through 226, Title 26, Code of Alabama 1940, entitled "Claims and Procedure for Benefits" provides the administrative machinery for processing claims for unemployment compensation. Originally the claim is passed upon by a deputy designated by the Director of the Department of Industrial Relations. From the decision of the Deputy any of certain designated interested parties may appeal to an Appeals tribunal of the Department, commonly called Appeals Referees, and from the decision of the appeals tribunal an interested party may appeal further to the Board of Appeals. Secs. 215–219, supra. The decision by the Board of appeals exhausts the administrative remedies of the parties.

Sections 220 and 221 of Article 5, supra, provide however that any aggrieved party may appeal the decision of the Board of Appeals to the circuit court of the county of the residence of the claimant. Trial in the circuit court is de novo.

Section 222, makes the procedure provided in Article 5 exclusive in such matters.

Section 223, among other things, empowers the deputy, appeals referee, or any member of the Board of Appeals to compel the attendance of witnesses, and further provides: "Witness fees and other expenses involved in the proceedings under this article shall be paid to the extent necessary at rates specified by the director. Such expenses shall be deemed a part of the expense of administering this chapter."

Appellant's counsel argues that the court costs of an appeal to the circuit court, under the above provisions, are a part of the costs of administering the unemployment compensation claims.

Clearly, three tribunals, quasi judicial in character are established for administering and processing the claims. While they are empowered to compel attendance of witnesses, no provision for the payment of fees to such witnesses as may be subpoenaed by these administrative officials is provided, other than in the provisions of Section 223, above set out, which it must be noted, authorized such payments, *to the extent necessary,* and shall be deemed a part of the expense of administering the unemployment compensation law.

While it is true that Section 221 permits an aggrieved party to perfect an appeal to a circuit court, such process is optional. When the appeal is perfected to the circuit court the proceeding loses its administrative character, whose expenses, to the extent necessary, must be borne by the director, and becomes a judicial proceeding in every aspect. The litigant is assured of a full hearing, with compulsory attendance of witnesses. As a judicial proceeding it is subject to the law regulating the payment of costs for such proceedings, which are assessed only after the litigant has had his day in court, and the worth of his claim determined.

We quote the following from a part of appellant's counsel's argument that the lower court was unauthorized to tax the court costs of this suit against the appellant:

"By placing section 223 and 222 in the Code it is clear that the legislature contemplated that actions would arise and the legislature with a knowledge of the future and with a wise prognostication they knew

478

that an unemployed person has no ready cash nor the means of employing counsel, and with this in mind they intended to tax the costs of proceedings such as this against the Department of Industrial Relations.

"In all proceedings before the claim Boards and Appeals Referee the costs are taken care of by the Department of Industrial Relations and not one cent is chargeable to the claimant.

"The unemployment laws make no provisions which enable the worker to freely exercise his choice as to whether he will be governed by the legislation; if he is employed by an employer that comes under the unemployment laws he is required to contribute, the money is automatically deducted from his salary, yet it is the sweat of his brow and the toil of his hands that earns that salary, he exercises no control as to whether he desires to enjoy the benefits by contributing or if he will refuse to contribute to this fund. Yet when he appears in Court to claim that right or privilege he meets a set rule of disqualification or taxes the costs against him."

■ The speciousness of the above argument is it overlooked the fact that a claimant is given, under the liberal provisions of our unemployment law, a right to three reviews of decisions on his claim, all free of costs, before disinterested quasi judicial tribunals. It further overlooks the fact that fellow employees, as well as employers, also contribute to the unemployment fund. By such action they also acquire an interest in the fund, and in the integrity of its maintenance. No matter how frivolous the claim, a claimant is permitted three cost free reviews of his claim. If he still feels aggrieved he may appeal to the circuit court. If he elects to seek a judicial review a method is already at hand to insure the attendance of his witnesses. To no extent is it necessary that these costs be paid by the Director to insure attendance of these witnesses, or to administer the law. Thus the very terms of the statute sought to be invoked denies the argument of appellant's counsel.

Affirmed.