106 So.2d 885

## AVONDALE MILLS

v.

## George BURNETT.

6 Div. 321.

Supreme Court of Alabama.

Sept. 11, 1958.

David J. Vann and White, Bradley, Arant, All & Rose, Birmingham, for petitioner.

Edwin C. Betts, Birmingham, opposed.

SIMPSON, Justice.

Writ of certiorari to the Court of Appeals was granted to review the opinion and judgment of that court in an Unemployment Compensation case, where that court affirmed the holding of the Circuit Court awarding appellee, Burnett, compensation.

■ The opinion of the Court of Appeals does not purport to contain a complete exposition of the evidence, but it explicitly makes the facts therein stated the foundation for its decision, after applying what it considered to be the applicable law. The question,· therefore, is up for proper review by this Court. Greene v. Department of Indus. Rel., 263 Ala. 564, 83 So.2d 364; Ex parte Alabama Textile Products Corp., 242 Ala. 609, 7 So.2d 303,

141 A.L.R. 87; Department of Indus. Rel. v. Haynes, 259 Ala. 238, 67 So.2d 62.

The question is whether Burnett, an employee of appellant Mills, is entitled to his unemployment compensation after leaving the employment of appellant. Subsection B of § 214, Tit. 26, Code 1940, as amended, provides if the employee "has left his employment voluntarily without good cause connected with such work", he is disqualified for unemployment benefits. After a careful review of the authorities as applied to the facts stated in the opinion of the Court of Appeals, we are constrained to hold that the employee was disentitled to benefits—in other words, that he left his employment voluntarily without good cause connected with his work.

Claimant had been employed by Avondale Mills for several years when his employment was terminated. During this time he had been given additional tasks beyond his principal duties more than once, and evidently had performed them, as it was testified that he was a very good worker and that the company was satisfied with his work. The circumstances surrounding his termination of employment are thus stated in the opinion of the Court of Appeals:

"Claimant stated that on his last day at work his immediate superior, Mr. Walt Jones, the assistant foreman, told him that in addition to his other duties he would be required to push all cans of 'drawing' from the frames, push out the cans and brush them, and straighten up the big alley. Claimant replied he already had more work than he could do; whereupon Mr. Jones said, 'if you don't do it you are fired'. Mr. Burnett started carrying his brooms toward the front of the room, and Mr. Jones said, 'I mean for you to go out now.' 'Punch your card'.

"Claimant left without punching his card. He never went back to the mill, but he did go to the office next morning and was given some papers and sent to 'personnel.' He told personnel, 'they put so much work on me I can't do it.' * * *

"The testimony for the company tended to show that during claimant's employment there were 30 to 33 speeders in the Card room, but in January, 1955, to make room for new equipment due in April, the company started removing a few speeders at a time until some 15 had been removed, thus reducing the amount of roving hauling, and for this reason Mr. Burnett was to be given the additional duty of pushing drawing to the lap winders, a task which would take 15 or 20 minutes once or twice a day. * * *

"Mr. Jones testified that in a written statement prepared at the time of the occurrence, he reported, 'I told him if he was not going to push the drawing he would have to punch his card and go home. Mr. Burnett walked off his job and went home without punching his card,' but that he thought Mr. Burnett would be back next day."

According to the records in the personnel file of appellant Mills, "Mr. Burnett was not discharged, he quit".

We find a good definition of "good cause" within the meaning of the Code section, supra, in Department of Indus. Rel. v. Mann, 35 Ala.App. 505, 50 So.2d 780, 783, where it is stated: "We must therefore conclude that the legislature meant a reasonable cause, one that is material and substantial as applied to a particular set of facts".

█ █ We think the two cases of Henderson v. Department of Indus. Rel., 252 Ala. 239, 40 So.2d 629, and Department of Indus. Rel. v. Wall, 34 Ala.App. 530, 41 So.2d 611 are conclusive to the result that the claimant failed to discharge the burden of proof. Where an employee leaves his work of his own volition, he has the burden of proving facts to avoid the requirement of the statutory provision, supra. In the

case at bar, therefore, the burden of proof was upon claimant, Burnett, to show that he left the employment of Avondale Mills for good cause connected with the work. In our opinion, the claimant failed to meet this burden.

In Henderson v. Department of Indus. Rel., supra [252 Ala. 239, 40 So.2d 630], the claimant contended that the evidence showed that he had two good causes connected with his work for leaving his employment, one of which was that he was assigned duties in addition to those he was required to perform when he entered that employment and therefore was unable to do the work properly. This Court rejected both contentions, and with reference to the latter stated:

> "Henderson's primary duty was to move plastic cans containing a light cotton material from one machine to another. The evidence tends to show that these cans had to be moved approximately every thirty minutes during his eight-hour shift. During the last year of his employment he was charged with the performance of two additional duties. One of them he had to perform only twice a week, and each performance required only fifteen minutes. The other was to be done every day and, according to his statement, could be accomplished in about one and one-half hours. Neither of such duties required much physical exertion. Both of them merely required the use of light mechanical equipment with which certain portions of the premises and equipment were cleaned.

> "Henderson was not discriminated against in this regard. Other employees of the mill whose primary duty was to move 'cans' on other shifts were given the same or similar additional duties.

> "Henderson claimed that these new duties required him to do more work during the eight-hour shift than he had to do before they were assigned

him. But two of his own witnesses, who were employees of the mill, and who also worked on the 'can' moving job, testified that such new duties were added when their primary duty was lessened as a result of a change in the type of product being manufactured."

The Court held that Henderson had failed to meet the burden of proving that his termination of employment was for good cause.

In the case of Department of Indus. Rel. v. Wall, supra, the claimant had been employed as a spare hand and smash hand in the weave room of employer's textile manufacturing business. Claimant was transferred by the company from the upstairs weave room to the downstairs weave room in the same department as a smash hand. She refused to work in this department, claiming that she was unable to do the work, even though she testified that she made no effort to operate the machines assigned her. The machines in this department were slightly longer, higher, and faster than those on which she had been working, but otherwise were identical with the machines in the upstairs weave room, and the rate of pay was the same. Her refusal to work resulted in the termination of her employment. She made no effort to undertake or try to perform the duties of her new assignment, but refused to work as directed because she thought she was unable to operate the larger machine. Other employees of the mill were operating the machines without difficulty. It was the holding of the Court of Appeals in that case that claimant failed to meet the burden of proof that she had left her employment for good cause.

■ It seems clear to us that the instant case is controlled by the Henderson and Wall cases. Claimant argues that the Wall case is not squarely in point in that, in that case, the employee was told to do tasks in lieu of tasks which she had previously been performing, whereas in the instant case the new duties were in addition to the work being performed. That is to some

**86**

extent true with regard to the Wall case, but we might point out that the testimony there showed that the machines to which she had been newly assigned were slightly longer, higher and faster than those on which she had been working, and claimant refused to work as directed because she thought that she was unable to operate the larger machine. Furthermore, the evidence of the instant case tends to show that claimant's ordinary duties had been reduced as a result of the removal of some fifteen speeders from the card room to provide room for new equipment. The "additional" duty assigned to Mr. Burnett was pushing drawing to the lap winders, which would consume only 15 or 20 minutes once or twice a day. Therefore, it cannot be said that the task of pushing drawing to the lap winders was wholly in addition to his previous work. The Henderson case is helpful in bringing the case at bar into focus at this point. This Court there rejected the claimant's contention that he was justified in leaving his work because additional duties had been forced upon him, although the additional duties would require an *extra one and one-half hours each day and one-half hour per week*. The evidence showed that the new duties were added when their primary duty was lessened as a result of a change in the type of product being manufactured.

█ The facts fail to show that Mr. Burnett was placed in any degree of danger by the assignment of additional duties or that there was likelihood that the additional work would produce physical injury or that he was unduly imposed upon by these additional duties; neither do the facts disclose that Mr. Burnett was disabled from or incapable of performing the additional work or that such tasks were unfair or harmful. It is also to be noted from the facts appearing in the opinion .of the Court of Appeals that he refused to make a good faith effort to perform the work assigned, saying: "They put so much work on me I can't do it". We think the facts stated show that it was his own voluntary act in terminating his

employment. We do not think the test of "good cause" is whether the employee thought he was fired. If the employee, of his own volition, refuses to comply with a reasonable job direction by his employer, the employer is entitled to release him from employment. To hold otherwise would place an illogical duty upon the employer to retain recalcitrant employees or discharge them at its own risk. We do not think the law should operate to this result.

Other recent cases analogously supportive are: Department of Indus. Rel. v. Haynes, supra; Department of Indus. Rel. v. Mann, supra; Department of Indus. Rel. v. Garrett, 38 Ala.App. 213, 81 So.2d 691.

It results that we are at variance with the conclusion of the learned Court of Appeals, and therefore must order a reversal.

Reversed and remanded.

All the Justices concur.