231 So.2d 137

**DEPARTMENT OF INDUSTRIAL RELA-
TIONS and Dan River Mills**

v.

**Eleanor S. ESTES.**

**5 Div. 4.**

Court of Civil Appeals of Alabama.

Jan. 28, 1970.

J. Eugene Foster, James R. Solomon, Jr., Montgomery, for appellants.

Speaks & Burnett, Clanton, for appellee.

BRADLEY, Judge.

This is an appeal from a judgment of the Circuit Court of Chilton County allowing appellee's claim for unemployment compensation.

In the administrative process her claim was denied until the case reached the circuit court.

The case was tried de novo before the court without a jury (Title 26, Section 221, Code of Alabama 1940, as amended), with the following stipulations:

(1) That the appellee had exhausted all of her administrative remedies and that the court had jurisdiction over her appeal; and

(2) That the issue to be determined by the court was whether the appellee left her employment with Dan River Mills voluntarily without good cause connected with her work within the meaning of Section 214–B, Title 26, Code of Alabama 1940, as amended.

Judgment was rendered in favor of the appellee in the amount of $952.00.

The facts show that Mrs. Eleanor S. Estes (hereinafter called the claimant) was working for Dan River Mills in Clanton, Alabama, as a spinner, at the time she left her employment, which was in November 1965. She had worked for Alabama Mills and Dan River Mills for over 21 years and had been a good worker.

Dan River Mills bought out, and took over the operation of, the Clanton mill of Alabama Mills about nine years prior to the time claimant left her employment. At that time some of the employees were discharged, and claimant testified that the work load increased, i. e., "it began to run faster, and it was just a lot harder."

The claimant stated that at the time she left her employment, she was running 22 sides and had been doing so for some time; although the number of sides would vary depending on working conditions and type of yarn. She denied that a normal work load was 27 sides for a spinner.

She testified that the work load increased to the point where it was making her nervous and affecting her health and causing her to go to the doctor. However, the record is void of any testimony of a doctor concerning her condition, neither is there any testimony by the claimant concerning any illness that she had been suffering from, or how her mental or physical condition had been affected. Her statement was, "It worked on your nerves, as well as just physical fatigue."

The claimant said that she complained to her supervisor, Mr. Minor, about the increased work load, but he said that there was nothing he could do about it. Although, on occasion, Mr. Minor would get someone to help her with the job.

In November 1965, claimant gave a week's notice to the company that she was

leaving, and, at the end of the week's notice, she did leave the company's employ.

At the time claimant left the employ of the company, there were six to eight other women spinners working there doing the same type work that claimant had been doing. Claimant also stated that she did not ask the company for a leave of absence prior to her leaving its employ.

The claimant testified that at, and prior to, the time she left her employment, the work was "running rough." She stated this condition was brought about by the company trying to run too much yarn through the machine, causing threads to break, more ends to tie, and balling up of the thread, all of which caused her more work than she could do. She did say that usually it was a temporary condition, except for this last time, when it seemed to go on for a much longer period.

The claimant then testified that she was unemployed for about four months; then she went to work for Bargain Town, a retail store in Clanton, Alabama.

Mrs. Hazel Wilson, a witness for claimant, stated that she went to work for Dan River Mills in Clanton, Alabama as a spinner, and had worked for them for several years. She did the same job claimant was *doing before claimant left Dan River* Mills. She stated that she could not run the job, and it was injurious to her health. So, she quit. At the time witness quit, she was running 22 sides.

The witness stated that it was normal for a job to run rough, but not as rough as the job she and claimant had tried to run. However, she did state that some spinners were doing 27 sides, but she could not do that many.

Mr. Higgins, an overseer on claimant's shift, testified that at the time claimant left her employment with Dan River Mills, a normal work assignment for a spinner was 27 sides. But he stated that the company had dropped the number of sides down to 23 because the work "was running

a little bit bad." He did say, however, that this condition was temporary, and was due to several factors, such as the weather or a gear in the roping frames.

Mr. Higgins stated that the work load had not been increased for the past several years.

Mr. Henry A. Walker, Superintendent of the Clanton mill for Dan River Mills, testified that the number of sides set as a work assignment or job load for a spinner was the result of a time and motion study made by technicians from the Standards Department of the company. He stated that the type of yarn being run at the time would be considered by those making the study.

He also stated that the operating condition of "running rough" was always temporary—the duration of the condition depended on the various factors that might be causing it.

He also stated that there was work available for claimant with the company.

The only issue for determination by this court is whether the claimant-appellee voluntarily left her work with Dan River Mills for good cause connected with her work within the meaning of Title 26, Section 214, subd. B, Code of Alabama 1940, as amended.

Title 26, Section 214, subd. B, Code, supra, provides:

"An individual shall be disqualified for total or partial unemployment:

\*   \*   \*   \*   \*   \*

"B. If he has left his employment voluntarily without good cause connected with such work;   \*   \*   \*."

The evidence is without dispute that claimant voluntarily left her employment with Dan River Mills, because, by her own testimony, she gave a week's notice that she was leaving, worked the week's notice and then left.

Consequently, when claimant admitted that she left her employment with Dan

River Mills voluntarily, but sought to avoid the disqualification from receiving unemployment compensation benefits under Section 214–B, supra, the burden was then cast upon her to show that she had good cause connected with her work for leaving such employment. Avondale Mills v. Burnett, 268 Ala. 82, 106 So.2d 885.

■ The question then is, did she sustain this burden? We think not.

The Alabama Court of Appeals in Dwight Mfg. Co. v. Long, 36 Ala.App. 387, 56 So.2d 685, defined "good cause" as used in Section 214–B, supra, as:

"* * * substantial reason; just ground for such action; adequate excuse that will bear the test of reason; and always the element of good faith."

The Court of Appeals of Alabama in Department of Industrial Relations v. Chapman, 37 Ala.App. 680, 74 So.2d 621, also said that ill health is a compelling reason for quitting one's work, but if it is not connected with the work, it will not be "good cause" for avoiding the disqualification set out in Section 214, subd. B, supra.

The evidence showed that claimant had been working as a spinner for Dan River Mills for about nine years, running anywhere from 21–24 sides, whereas other spinners working for the mill were running 27 sides.

Also claimant contended that the speedup in the machine, and consequently, a speedup in her work, occurred in 1956 when Dan River Mills bought out Alabama Mills; yet she worked for nine years as a spinner, running 21–24 sides all that time and did not quit until 1965. Furthermore, prior to the time she left her employment, she did not ask for a leave of absence so that she might regain her health.

. As stated in West Point Manufacturing Co. v. Keith, 35 Ala.App. 414, 47 So.2d 594, the failure to ask for sick leave adds to the burden cast upon a claimant to show that he had good cause connected with his work for leaving such employment.

Nowhere in the record is there any mention made of the doctor that claimant consulted, for what disease or ailment she might have been suffering with, or just when the illness was brought about that she might be suffering from.

All of the evidence presented on behalf of claimant reveals a grave deficiency in meeting the requirements heretofore mentioned of "substantial reason; * * * adequate excuse that will bear the test of reason; * * *."

It cannot be said with justification that an alleged speedup of the machine on which she was working some nine years before (and this was not conclusively proved), was the substantial reason for some as yet unproved mental or physical disease or illness causing her to leave her employment.

At most, the tendencies of the evidence for the claimant show that she had grown older, and would become fatigued more easily, all of which could lead to frustration in carrying out her job assignment, and this would make her nervous.

It is, therefore, the opinion of this court that claimant has failed to sustain the burden of proving that she was not disqualified to receive unemployment compensation as required by Section 214, subd. B, supra, and, we feel that the trial court, in finding for the claimant, did so contrary to the great weight of the evidence, and thereby committed reversible error. Department of Industrial Relations v. Garrett, 38 Ala.App. 213, 81 So.2d 691; Henderson v. Department of Industrial Relations, 252 Ala. 239, 40 So.2d 629.

This case is,

Reversed and remanded.