700 So.2d 1388 (1997)
DIRECTOR, DEPARTMENT OF INDUSTRIAL RELATIONS, STATE OF ALABAMA
v.
Wayne D. FORD.
2950683.
Court of Civil Appeals of Alabama.
May 2, 1997.
Certiorari Denied July 25, 1997.
*1389 Frank D. Marsh, general counsel, Alabama Department of Industrial Relations, Montgomery, for appellant.
Linda L. Lund, Legal Services Corporation of Alabama, Dothan, for appellee.
Alabama Supreme Court 1961395.

On Application for Rehearing
THOMPSON, Judge.
This court's opinion of March 14, 1997, is withdrawn, and the following opinion is substituted therefor.
This unemployment compensation case was originally assigned to a former judge and was recently reassigned. We affirm.
Wayne Ford was president and manager of Wayne Ford Contracting, Inc., and as such was both the employer and an employee of the company. He was also the sole stockholder in the corporation. Ford closed his contracting business in April 1994 and applied for unemployment compensation on May 18, 1994. Benefits were denied.
Ford appealed the decision denying benefits to an unemployment compensation referee. The referee affirmed the denial. Ford then applied for leave to appeal to the Board of Appeals; the Board denied his application, and he appealed to the Circuit Court of Dale County.
At trial before the circuit judge, the Department of Industrial Relations argued that Ford, as the president of Wayne Ford Contracting, Inc., had voluntarily quit work when he decided to close the business and that he was, therefore, disqualified from receiving benefits, according to Ala.Code 1975, § 25-4-78(2), which reads in part, "An individual shall be disqualified for total or partial unemployment:... (2) VOLUNTARILY QUITTING WORK.If he has left his most recent bona fide work voluntarily without good cause connected with such work."
At trial, Ford testified regarding the financial status of his business and his reasons for closing it. He testified that two floods, one in 1990 and another in 1994, caused extensive damage to his facility and that as a result the business suffered considerable losses. Further, Ford testified that changes in the way that his primary customer, the United States Army through its operations at Fort Rucker, awarded contracts adversely affected his business. Ford testified that he was in business for almost 20 years and that during that time he had paid what the law required in taxes for unemployment insurance for himself and his employees. He also stated that he would have kept the business going if he could have done so.
The trial judge determined that Ford had not quit work voluntarily but, because of "economic and financial circumstances and considerations beyond his control," had been forced to close the business. The court ruled in favor of Ford, granting unemployment benefits.
*1390 Whether an employee leaves his employment voluntarily without good cause is a question of fact. Lagrone v. Department of Indus. Relations, 519 So.2d 1345, 1347 (Ala. Civ.App.1987). Thus, when the court sits without a jury, as in this case, the ore tenus rule applies. Id. Therefore, we must apply a presumption of correctness as to the trial court's findings. Gaston v. Ames, 514 So.2d 877 (Ala.1987).
The Department of Industrial Relations again asserts here on appeal that Ford terminated his employment voluntarily and for personal reasons and is, therefore, not entitled to unemployment benefits. The Department cites Ford's testimony at trial to prove that he quit business voluntarily. That testimony is as follows:
"Q. Mr. Ford, as President and Manager of Wayne Ford Contracting, Incorporated you made a business decision to quit business, didn't you?
"A. I would say that's correct. I quit business because I was losing money and it was just a matter of time before somebody was coming to close it for me.
"Q. Okay. But, you made that decision yourself?
"A. Based on the facts I had, I had to make that decision, yes, I did."
Ford testified that the business was no longer profitable and that it had begun to experience substantial losses in the three years preceding the closing. He testified that the closing of the business was his only recourse, short of filing for bankruptcy protection. He convinced the trial court that he had no reasonable choice but to close the business.
The Department of Industrial Relations asks this Court to conclude that because Ford personally decided to cease doing business, without being directly forced to do so by some other person or entity, the decision to quit working was voluntary. The Department asks the court to ignore all of the circumstances which led to the closing of the business.
The word "voluntary" is not defined in Ala.Code 1975, § 25-4-78. "The rules of statutory construction require that the words used in a statute be given their plain, natural, ordinary, and commonly understood meaning." Ex Parte New England Mutual Life Ins. Co., 663 So.2d 952, 955 (Ala.1995) (citing Alabama Farm Bureau Mutual Casualty Co. v. City of Hartselle, 460 So.2d 1219, 1224 (Ala.1984)). The word "voluntary" implies the making of a decision by one's own accord or choice. "Voluntary" is defined as "[r]esulting from free choice, without compulsion or solicitation." Black's Law Dictionary 1575 (6th ed.1990).
According to the testimony, Ford closed his business to prevent further losses and because he knew that the bank would soon foreclose. Although this issue has not yet been addressed in Alabama, other jurisdictions have determined that where a business owner closes the business because the business has failed, the owner quits voluntarily, because the success or failure of the business was in the control of the owner. See Fish v. White Equipment Sales & Service, Inc., 64 Wis.2d 737, 221 N.W.2d 864 (1974); Mednick v. Unemployment Compensation Board of Review, 196 Pa.Super. 73, 173 A.2d 665 (1961). We find this reasoning persuasive. In this case, Mr. Ford chose to close his business. We hold that this choice was voluntary, even though an involuntary closing of the business would probably have occurred soon.
The trial court also determined that the circumstances of this case constituted a "good cause" for purposes of Ala.Code 1975, § 25-4-78. The Alabama Code of 1975 does not define "good cause" for purposes of § 25-4-78(2); neither did its predecessor. The language in § 25-4-78, Ala.Code 1975, is virtually identical to the language in Tit. 26, § 180 et seq., Ala.Code 1940, which dealt with unemployment compensation. In interpreting the term "good cause" for the purposes of unemployment compensation under the 1940 Alabama Code, the Alabama Court of Appeals in 1950 ruled that "the legislature meant a reasonable cause, one that is material and substantial as applied to a particular set of facts." Department of Indus. Relations v. Mann, 35 Ala.App. 505, 50 So.2d 780, cert. stricken, 255 Ala. 201, 50 So.2d 786 (1951). This Court has adopted the same *1391 language in interpreting "good cause" under the 1975 Code of Alabama: "... in order to be eligible for unemployment compensation benefits, § 25-4-78 requires an employee to terminate employment for a reasonable cause, i.e., a cause that is material and substantial under the circumstances." State Department of Industrial Relations v. Prance, 369 So.2d 289, 291 (Ala.Civ.App.1979) (citing Department of Indus. Relations v. Mann, 35 Ala.App. 505, 50 So.2d 780, cert. stricken, 255 Ala. 201, 50 So.2d 786 (1951)). See also State Department of Indus. Relations v. NYCO, Inc., 513 So.2d 650 (Ala.Civ.App.1987); Department of Indus. Relations v. Lynch, 370 So.2d 1050 (Ala.Civ.App.1979); Lagrone v. Department of Indus. Relations, 519 So.2d 1345 (Ala.Civ.App.1987).
Given the definition of "good [reasonable] cause," the question under § 25-4-78, Ala.Code 1975, becomes whether, under the circumstances of this case, Ford had a "material or substantial" cause that made him leave his employment. The Department of Industrial Relations argues that this court must determine that Ford did not quit for "good cause," under the holding of Davis v. Sherer, 381 So.2d 643 (Ala.Civ.App.1980). However, the facts of Davis v. Sherer must be distinguished from the facts of this case. In Davis v. Sherer, the only reason the former business owner/employee gave for his admittedly voluntary termination of employment was that the machinery used in his business was antiquated. This court held that the mere aging of business equipment was not a substantial reason for the business owner to voluntarily terminate his employment. Davis v. Sherer, supra. This court stated that the "claimant was disqualified from receiving unemployment compensation benefits due to his failure to prove that he had `good cause' under the statute for terminating his employment." Davis v. Sherer at 644.
The facts of this case are distinguishable from those in Davis v. Sherer, supra. Ford's business had sustained considerable losses because of two floods. His primary client changed the manner in which it did business, and that change had a further adverse impact on his business. Ford testified that he could no longer afford to keep the business open. Because of the failure of the business, Ford lost his residence and other personal assets that secured loans for his business.
"[T]he Unemployment Compensation Act is remedial in character, and its beneficent purpose should be liberally construed, and its provisions of disqualification from benefits should be narrowly construed." Holmes v. Cook, 45 Ala.App. 688, 691, 236 So.2d 352 (1970) (citing Department of Indus. Relations v. Stone, 36 Ala.App. 16, 53 So.2d 859 (1951)). Under the facts of this case, we hold that Ford did have good cause to close his business.
We are also persuaded by Ford's argument in his brief challenging the equity of allowing the Department of Industrial Relations to accept unemployment compensation taxes from Ford and then to deny benefits because he owned the business. Under the Department's argument, there would be virtually no circumstances under which a business owner, having paid unemployment compensation taxes, would be eligible for benefits.
In a similar case, the Supreme Court of Iowa, reversing a holding denying a business owner unemployment benefits, stated that "the remedy is not to pretend there has been a voluntary quit," but "to call for a legislative amendment that would bar coverage." Bartelt v. Employment Appeal Board, 494 N.W.2d 684, 686, 687 (Iowa 1993). A Pennsylvania court, although denying unemployment benefits to a business owner, acknowledged that collection of "unemployment compensation tax to cover, inter alia, this claimant ... [was] inequitable but it has been corrected by the legislature." Bernstein v. Unemployment Compensation Board of Review, 197 Pa.Super. 324, 178 A.2d 831, 832, 833 (1962). We agree with the reasoning of these courts.
Although we disagree with the trial court's holding that Ford did not quit work voluntarily, we find ample evidence to support the *1392 trial court's finding that Ford quit his employment for "good cause." We therefore agree that Ford is entitled to unemployment benefits under § 25-4-78(2). Accordingly, we affirm.
ORIGINAL OPINION WITHDRAWN; OPINION SUBSTITUTED; APPLICATION OVERRULED; AFFIRMED.
MONROE and CRAWLEY, JJ., concur.
ROBERTSON, P.J., and YATES, J., concur in the result.