*549 PER CURIAM.
The State Department of Industrial Relations (“DIR”) appeals from a judgment of the Mobile Circuit Court awarding unemployment-compensation benefits to Linda Mae Campbell. We reverse and render a judgment for DIR.
The record on appeal reveals the following. On October 12, 2004, Campbell became employed as a maintenance worker by McKibbon Hotel Management d/b/a Residence Inn (“McKibbon”). On November 27, 2005, Campbell telephoned one of her supervisors, Amy Flowers, and requested a 30-day “emergency personal leave of absence.”[1] Campbell did not advise Flowers as to the reason that she was requesting the leave of absence. Campbell testified that she was never asked why she had requested the leave of absence; conversely, Flowers testified that she had asked and that Campbell had refused to answer. Campbell testified that Flowers had stated that she likely could not grant the leave of absence but that she would get back to Campbell in “two or three days.” Campbell also testified that she did not hear from Flowers again and that, on December 1, 2005, she enrolled in the “in-treatment program at the Wings of Life” to receive treatment for her addiction to crack cocaine. Campbell further testified that, after completing 30 days of treatment at Wings of Life, she had “called the unemployment people to file [her] pennies” and was informed that she had been “dismissed” from her employment with McKibbon. However, Flowers testified that Campbell had not been dismissed; rather, Flowers testified that “[f]rom [Flowers’s] determination, [Campbell] was a no call no show and therefore had quit her job.” Campbell then filed a claim for unemployment compensation benefits; that claim was denied. Campbell appealed to DIR’s Hearings and Appeals Division, which affirmed the denial of her claim. Campbell then filed an application for leave to appeal to DIR’s Board of Appeals; that application was disallowed.
On March 21, 2006, Campbell filed a notice of appeal with the trial court. After a number of delays, a trial de novo was held on December 20, 2007. On January 10, 2008, the trial court entered a judgment reversing the decision denying Campbell’s claim and awarding Campbell unemployment-compensation benefits. The trial court’s January 10, 2008, judgment included the following pertinent findings;
“1. Plaintiff, Linda Mae Campbell, became a full-time employee of ... Mc[K]ibbon ... on October 4, 2004[,] at an initial pay rate of $8.00 per hour.
“3. As a part of the hiring process, [Campbell] was given certain documentation by ... McKibbon ... entitled ‘Benefits Summary Sheet’ which was offered into evidence at the Trial as Plaintiffs Exhibit One.
“4. This ‘Benefits Summary Sheet’ provided that full time associates were eligible for Family Medical Leave and Personal Leave after 12 months of service.
“5. On November 27, 2005, ... [Campbell] contacted her supervisor, Amy Flowers, and requested a thirty (30) day leave of absence. This requested leave of absence was for [Campbell] to enter a substance abuse rehabilitation program at the Wings of Life ....
“6. [Campbell’s] request for the personal leave of absence was thereafter *550 denied by [McKibbon] and [Campbell] entered and subsequently completed the Wings of Life Substance Abuse Rehabilitation Program on March 5, 2006. During the time [Campbell] was in the treatment program, her employment with [McKibbon] was terminated.”
The trial court’s January 10, 2008, judgment also contained conclusions of law, including the following:
“1. That under Section 25-4-78(2), [Ala.Code 1975], an employee shall be disqualified for unemployment benefits if the employee left the job voluntarily without good cause connected with such work. However, under [§ 25-4-78(2)a.l.(i) ], an employee shall not be disqualified if the employer had in effect an established leave-of-absence program and it was followed by the employee.
“2. The [trial] Court concludes that [McKibbon] had in effect an established leave-of-absence program which was outlined in the ‘Benefits Summary Sheet’ supplied to [Campbell] and that [Campbell] was eligible for Family Medical Leave or Personal Leave thereunder when she requested a leave of absence from her employment on November 28, 2005.
“3. That based thereon, the [trial] Court reverses the prior decision denying unemployment compensation benefits to [Campbell] and finds that based thereon, [Campbell] is entitled to unemployment compensation benefits from [McKibbon] from November 28, 2005 until May 28, 2006 at the rate of $180.00 per week for twenty-six (26) weeks for a total award of $4,680.00.”
DIR appeals.
The dispositive issue on appeal is whether Campbell is disqualified from receiving unemployment-compensation benefits under Ala.Code 1975, § 25-4-78(2), which provides, in pertinent part:
“An individual shall be disqualified for total or partial unemployment:
“(2) VOLUNTARILY QUITTING WORK. If he has left his most recent bona fide work voluntarily without good cause connected with such work.
“a.l. However, he shall not be disqualified if he was forced to leave work because he was sick or disabled, notified his employer of the fact as soon as it was reasonably practicable so to do, and returned to that employer and offered himself for work as soon as he was again able to work; provided, however, this exception shall not apply if the employer had an established leave-of-absence policy covering sickness or disability and:
“(i) The individual fails to comply with same as soon as it is reasonably practicable so to do; or
“(ii) Upon the expiration of a leave of absence shall fail to return to said employer and offer himself for work, if he shall then be able to work, or if he is not then able to work, he fails to so notify his employer of that fact and request an extension of his said leave of absence as soon as it is reasonably practicable so to do.
“2. In case of doubt that an individual was sick or disabled, or as to the duration of any such sickness or disability, the director may, or if the employer requests it, the director shall require a doctor’s certificate to establish the fact or facts in doubt.
“3. An established leave-of-absence policy shall be any leave-of-absence policy covering sickness and disability communicated to the employee by the customary means used by the employer for communicating with his employees.”
*551 On appeal, DIR argues that Campbell is disqualified from receiving unemployment-compensation benefits under § 25-4-78(2) because, DIR asserts, she voluntarily left her employment with McKibbon without good cause connected to her employment. DIR also argues that Campbell does not satisfy the exception to disqualification from receiving unemployment-compensation benefits under § 25^1-78(2)a.l. because, DIR asserts, Campbell failed to notify McKibbon of the reason that she left work and never returned to McKibbon and offered herself for work after completing the drug-rehabilitation program. Conversely, Campbell argues that she is not disqualified from receiving unemployment-compensation benefits under § 25-4-78(2). Specifically, Campbell argues that she is qualified to receive unemployment-compensation benefits under § 25-4-78(2)a.l.(i) because, she alleges, McKibbon had an established leave-of-absence policy covering sickness or disability and she followed that policy.
“Whether an employee leaves his employment voluntarily without good cause [under Ala.Code 1975, § 25-4-78(2) ] is a question of fact. Lagrone v. Department of Indus. Relations, 519 So.2d 1845, 1347 (Ala.Civ.App.1987). Thus, when the court sits without a jury, as in this ease, the ore tenus rule applies. Id. Therefore, we must apply a presumption of correctness as to the trial court’s findings. Gaston v. Ames, 514 So.2d 877 (Ala.1987).”
Director, Dep’t of Indus. Relations v. Ford, 700 So.2d 1388, 1390 (Ala.Civ.App.1997); see also Taylor v. Director, Dep’t of Indus. Relations, 491 So.2d 964, 965 (Ala.Civ.App.1986) (“[W]hether an employee is disqualified for benefits under Ala. Code (1975), § 25-4-78(2), is for the trier of fact to determine according to the evidence.”). Additionally, “where a trial court does not make specific findings of fact concerning an issue, this Court will assume that the trial court made those findings necessary to support its judgment, unless such findings would be clearly erroneous.” Lemon v. Golf Terrace Owners Ass’n, 611 So.2d 263, 265 (Ala.1992) (citing Knox Kershaw, Inc. v. Kershaw, 552 So.2d 126 (Ala.1989)). However, “ ‘[t]he trial court’s ruling on a question of law carries no presumption of correctness ....’” Chapman Nursing Home, Inc. v. McDonald, 985 So.2d 914, 919 (Ala.2007) (quoting Dunlap v. Regions Fin. Corp., 983 So.2d 374, 377 (Ala.2007)). Furthermore, “[i]t is well established that ‘[t]he Unemployment Compensation Act is ... intended to be a remedial measure for [the claimant’s] benefit. Therefore, it should be liberally construed in favor of the claimant and the [grounds for] disqualification[ ] from benefits should be narrowly construed.’ ” Barrett v. Five Star Food Serv., Inc., 959 So.2d 1113, 1115 (Ala.Civ.App.2006) (quoting Department of Indus. Relations v. Jaco, 337 So.2d 374, 376 (Ala.Civ.App.1976)). Moreover, the claimant bears the burden of proving that he or she is qualified to receive unemployment-compensation benefits and that he or she is not disqualified from receiving unemployment-compensation benefits. See Barrett, 959 So.2d at 1115 (citing Jaco, 337 So.2d at 376; and Davenport v. State Dep’t of Indus. Relations, 692 So.2d 851, 853 (Ala.Civ.App.1997)).
The trial court’s January 10, 2008, judgment concluded that “under subsection a.l. of [§ 25-4-78(2) ], an employee shall not be disqualified [from receiving unemployment-compensation benefits] if the employer had in effect an established leave-of-absence program and it was followed by the employee.” The trial court’s January 10, 2008, judgment also concluded that McKibbon “had in effect an established leave-of-absence program ... and that [Campbell] was eligible for Family Medical *552 Leave or Personal Leave thereunder .... ” Thus, it appears that the trial court implicitly concluded that Campbell had followed McKibbon’s established leave-of-absence policy and that, therefore, under § 25-4-78(2)a.l.(i), Campbell was eligible to receive unemployment-compensation benefits.
Section 25-4-78(2) provides that an individual may not receive unemployment-compensation benefits if he or she left his or her employment without good cause connected to that employment. Here, Campbell has presented no evidence nor any argument either at trial or on appeal indicating that her drug addiction or her subsequent need for rehabilitation was in any way “connected” with her employment with McKibbon such that it could constitute “good cause” for voluntarily leaving her employment. See § 25-4-78(2). Thus, because Campbell failed to establish that she did not leave her employment without good cause connected to that employment, she is disqualified from receiving unemployment-compensation benefits under § 25-4-78(2) unless she satisfies the three-pronged exception found in subsub-section a.1. See Davis v. Hoggle, 392 So.2d 1190, 1192 (Ala.Civ.App.1980) (citing Department of Indus. Relations v. Chapman, 37 Ala.App. 680, 74 So.2d 621 (1954); and Morrison v. Department of Indus. Relations, 35 Ala.App. 475, 48 So.2d 72 (1950)) (“[W]e note that a reason for voluntary termination, no matter how well justified, will not satisfy § 25-4-78(2) if it is personal and in no way connected with the employment.”).
Section 25-4-78(2)a.l. provides that an individual shall not be disqualified from receiving unemployment-compensation benefits if (1) he or she was forced to leave work because he or she was sick or disabled, (2) he or she notified his employer of the fact as soon as it was reasonably practicable so to do, and (3) he or she returned to that employer and offered himself or herself for work as soon as he or she was again able to work. See also Davis v. Stewart, 410 So.2d 62, 63 (Ala.Civ.App.1981). Here, it is undisputed that Campbell did not notify McKibbon that she had left her employment because she was “sick or disabled.” Instead, Campbell merely requested a leave of absence and failed to inform McKibbon of the reason that she was requesting it. It is also undisputed that Campbell did not return to McKibbon and offer herself for work after she had completed the drug-rehabilitation program. Campbell testified that, despite the fact that McKibbon had contacted Campbell’s daughter and had expressed a desire to reemploy Campbell, she did not contact McKibbon regarding her employment after she had completed the drug-rehabilitation program because she was not “interested in working for a company that would treat their employees like that.” Because Campbell does not satisfy the requirements of the exception to disqualification from receiving unemployment-compensation benefits found in § 25-4-78(2)a.l., we conclude that the trial court erred as a matter of law in awarding her unemployment-compensation benefits.
Furthermore, we conclude that the trial court erred in determining that Campbell was qualified to receive unemployment-compensation benefits under § 25-4-78(2)a.l.(i). The plain language of § 25-4-78(2)a.l.(i) and (ii) provides two situations under which the previously mentioned three-pronged exception to disqualification from receiving benefits “shall not apply.” (Emphasis added.) Section 25-4-78(2)a.l.(i) and (ii) is silent as to any additional exceptions to disqualification from receiving unemployment-compensation benefits. Under § 25-4-78(2), the only way in which Campbell could become eligi *553 ble to receive unemployment-compensation benefits would be if she had satisfied the three-prong test enumerated in subsubsection a.l., which she did not do. Therefore, we conclude that the trial court erred, as a matter of law, by interpreting § 25-4-78(2)a.l. to stand for the proposition that, because Campbell was covered under an established leave-of-absence policy and had allegedly complied with that policy, she had become eligible to receive unemployment-compensation benefits. We are sympathetic to the situation that Campbell found herself in, and we commend Campbell for seeking treatment for her drug addiction; however, we may reach no other conclusion but that the trial court’s judgment is due to be reversed and that a judgment denying Campbell’s claim for unemployment-compensation benefits is due to be rendered.
REVERSED AND JUDGMENT RENDERED.
THOMPSON, P.J., and PITTMAN and THOMAS, JJ., concur.
MOORE, J., concurs in the result, without writing.
BRYAN, J., dissents, with writing.

. Flowers testified that Campbell had not provided her with an exact length of time for the requested leave of absence; instead, according to Flowers, Campbell had informed her that she “did not know if [the leave of absence] would be thirty or ninety days."