960 P.2d 65

**CALIFORNIA PORTLAND CEMENT COMPANY, Appellant,**

v.

**ARIZONA DEPARTMENT OF ECONOMIC SECURITY and Wilma F. Young, Appellees.**

**No. 1 CA–UB 97–0089.**

Court of Appeals of Arizona,
Division 1, Department E.

June 2, 1998.

Ryley, Carlock & Applewhite by Thomas J. Kennedy and Michelle S. Ausdemore, Phoenix, for Appellant.

Grant Woods, The Attorney General by Kathryn L. Petroff, Assistant Attorney General, Phoenix, for Appellees.

## OPINION

KLEINSCHMIDT, Judge.

¶ 1 This is an appeal from a decision of the Arizona Department of Economic Security granting an employee's claim for unemployment benefits. The issue is whether the Appeals Board erred by finding that the employee, Wilma Young, was discharged by her employer, California Portland Cement, within the meaning of the unemployment compensation laws. If the employee was discharged, as opposed to having quit her employment, she is entitled to benefits.

¶ 2 The employee had worked for the employer for a number of years as a human resources manager. In 1996 she brought an employment discrimination claim against her employer. The parties sought to settle the claim and, as part of a proposal to do so, the employer required the employee to resign from her employment. The employee rejected the proposal until the language was changed to voluntary retirement, as opposed to resignation, so that she would be eligible for the employer's retiree medical program.

¶ 3 The employee, who had continued to work while her discrimination claim was pending, testified that she had not planned on retiring and did not want to do so. She retired only because the settlement agreement required it. The Appeals Board accepted this testimony as fact.

¶ 4 An employee generally bears the burden of proving eligibility for unemployment benefits. See Arizona Dep't of Economic Sec. v. Magma Copper Co., 125 Ariz. 389, 390, 609 P.2d 1089, 1090 (App.1980). However, "[w]hen a[n] [employee] states that he did not leave voluntarily, and the employer maintains he did, the burden of proof shifts to the employer to establish that there has been a quit." Ariz. Admin. Code ("A.A.C.") R6–3–50190(B)(2)(c).

¶ 5 The Department of Economic Security has adopted rules and regulations to use in determining whether an employee was discharged or voluntarily quit. The relevant regulation provides:

A. General

1. A worker's separation from employment is either a quit or a discharge.

2. The [employee] quits when he acts to end the employment and intends this result.

3. The separation is a discharge when it results from the employer's intent and action. This includes layoff for lack of work, and requests by the employer for worker's resignation.

4. In borderline cases the determination of whether a separation is a quit or discharge will be made on the basis of who was the moving party.

    a. The [employee] is the moving party when he could have continued to work under conditions of employment not amounting to new work, if the worker is offered continued employment on or before the termination date. This is true even though a date of separation has been stated or agreed to. See R6–3–50315.

    b. In any other situation the employer is the moving party, and the separation is a discharge.

    c. Generally, demands or expressions of criticism and efforts to clarify the position of the other party do not constitute notice of intent to quit or to discharge.

A.A.C. R6–3–50135 (Supp.96–1). The Appeals Board relied on this regulation and found, among other things:

A separation is a discharge when it results from an employer's intent and action, including those situations where an employer requests an employee's resignation. That is precisely what happened in the present instance. The [Employee] had no independent desire to resign or retire from her employment but did desire to settle the ongoing litigation she had with the Employer. As a condition of that settlement, the Employer required the [Employee] to retire from work. This factual circumstance establishes that the separation was a discharge from work.

The Appeals Board also found:

Counsel [for the Employer] also contends that the [Employee] acknowledged that she was not required to settle her lawsuit with the Employer, so in that sense, her separation from employment was "voluntary". This argument might have some validity if the Employer was forced to include the condition that the [Employee] resign or retire from her employment as part of the settlement agreement. *But just as the [Employee] was not forced to settle with the Employer, the Employer was not forced to require that the [Employee] leave her employment as a condition of that settlement.* Given the totality of circumstances presented by this case, it is evident that it was the Employer that was insistent upon this condition, and, therefore, the separation arose from the Employer's intent and actions.

¶ 6 The Appeals Board was right. Although the employee voluntarily entered into the agreement, her primary purpose in doing so was to settle her discrimination claim. It was the employer who made her retirement a condition for settling the discrimination claim. But for that condition, the employee

would have continued to work. As to the termination of employment, the employer was the moving party within the meaning of the administrative regulations.

¶ 7 There is an analogous case, *Employment Sec. Comm'n v. Magma Copper Co.*, 90 Ariz. 104, 366 P.2d 84 (1961), that supports our conclusion. In *Magma*, pursuant to a collective bargaining agreement between the employee's union and his employer, the employee was forced to retire on a pension after reaching a certain age. After the forced retirement, the employee applied for unemployment benefits. Although the commission granted unemployment benefits, the award of benefits was reversed on appeal to the superior court. The supreme court then reinstated the commission's award of benefits. After discussing several out-of-state cases, the supreme court said:

[W]e think the better view is expressed in the ... cases which focus upon the volition and intent of the individual workman at the time his employment is terminated. Construing a collective bargaining agreement's retirement provisions so as to deny benefits to one required to retire thereunder but willing and able to work violates at least the spirit if not the language of A.R.S. § 23–784,[1] ....

*Id.* at 110, 366 P.2d at 88. Thus, despite the employee's direct or indirect acquiescence in the collective bargaining agreement, the supreme court found that the employee was forced to leave work and his retirement was involuntary so that he was entitled to receive unemployment benefits in addition to his pension from Magma.

¶ 8 In the case before us, the employer cites a recently adopted regulation that the Appeals Board did not rely on. R6–3–50135(C) provides:

C. Leaving in Anticipation of Discharge. If a worker, based on information other

---

1. This statute provides:

    *No agreement by an individual to waive, release or commute his rights to benefits or any other rights under this chapter shall be valid,* except an agreement to satisfy child support obligations which is being enforced by the department pursuant to a plan under the Child Support Enforcement Act, as amended, which

has been approved by the secretary of health and human services under part D of title IV of the social security act, as amended, or an agreement between the individual and the department specifying an amount to be withheld as repayment towards an uncollected overissuance of food stamp coupons.
(emphasis added).

than the employer's authorized notification of discharge, believes that the employer intends to discharge the worker, the worker shall take steps, prior to leaving, to find out if the worker is, in fact, to be discharged. If the worker fails to do so and was not to be discharged, the worker leaves work voluntarily without good cause in connection with the work.

The application of this principle, the employer argues, puts the burden on the employee to determine whether she will be discharged if she does not accept the agreement. It is a fact that in this case the employee knew she could continue working if she did not accept the settlement agreement. The more pertinent observation is that the regulation may put the burden on the employee to inquire as to whether the provision calling for termination is an absolute condition of the agreement. If it is not, and the employee acquiesces in it, the termination would arguably be a quit and not a discharge. In any event, neither the legal argument as we cast that argument, nor the facts that might bear on it, were developed below.

¶ 9  In conclusion, it is important for employers and employees to understand that if the employer, as a condition of the settlement of disputes with employees, insists upon a termination of employment for reasons that do not otherwise disqualify the employee for benefits,[2] the termination will be a discharge and not a quit for purposes of unemployment benefits.

¶ 10  The Appeals Board's decision upon review is affirmed.

SULT, P.J., concurs.

GARBARINO, Judge, dissenting:

¶ 11  I respectfully dissent. At issue is the General Release and Settlement Agreement resolving Wilma Young's discrimination claim against her employer. Ms. Young was represented by counsel during the negotiations, and the agreement provided that she would retire from the company in exchange for $20,000 and retiree medical benefits.

¶ 12  Although Ms. Young had voluntarily executed this agreement, at a later date, she decided to apply for unemployment benefits. In order to receive these benefits, Ms. Young attempted to prove that she had been discharged as opposed to having voluntarily quit. The Appeals Board accepted Ms. Young's assertion that she had not possessed any independent desire to resign or retire from her employment but did so "to settle the ongoing litigation she had with the employer."

¶ 13  In affirming, the majority analogizes this case to *Magma*. The rationale of *Magma* has no application to this case, however. In *Magma*, our supreme court addressed a collective bargaining agreement that *forced* an employee to retire on a pension after reaching a given age. *Id.* at 105, 366 P.2d at 85. The court stated that "the better view is expressed in ... cases which focus upon the *volition and intent* of the individual workman at the time his employment is terminated." *Id.* at 110, 366 P.2d at 88 (emphasis added). In *Magma*, the court reconciled an employee's desire to continue working against the strict enforcement of a collective bargaining agreement negotiated between a union and an employer. *Id.* at 105, 366 P.2d at 85. The individual employee's intent had little, if any, bearing upon the collective bargaining agreement.

¶ 14  One cannot expect the same personal involvement by an employee in a collective agreement that would be found in a settlement agreement resolving a personal grievance. In this case, Ms. Young, acting with the advice of counsel, as an individual, *voluntarily* entered into an agreement with her employer. She does not attack the validity of this agreement nor does she allege overreaching, fraud, duress, or any of the conditions we traditionally look for to avoid a contractual obligation. Instead, it appears that she simply wants us to ignore the language of both her agreement and her retirement notice, each of which unequivocally states that she "voluntarily" elected to retire.

---

**2.**  See A.A.C. R6–3–5105 relating to disqualification for benefits when discharge is for employee's misconduct.

¶ 15 The majority also looks to A.R.S. section 23–784 as further support for claimant's contention that she was forced to leave work and to waive her right to benefits. However, Ms. Young did *not* waive her benefits. She agreed to dismiss her claim and to retire in return for $20,000 and retiree medical benefits. Accordingly, it is unreasonable to construe the agreement entered into by the parties to be a waiver, release, or commutation of rights within the meaning of A.R.S. section 23–784.

¶ 16 Apparently using hindsight, Ms. Young wishes she had not elected to "voluntarily retire," and she would like to repudiate that provision of her settlement agreement. The bottom line, however, is that Ms. Young voluntarily elected to retire as part and parcel of the same agreement that netted her $20,000 and retiree medical benefits.

¶ 17 I would set aside the award.