260 P.3d 1113

Linda O. FIGUEROA, Appellant,

v.

ARIZONA DEPARTMENT OF ECONOMIC SECURITY, an Agency, and Valley Learning Centers, Inc., Appellees.

No. 1 CA–UB 10–0055.

Court of Appeals of Arizona,
Division 1, Department E.

Aug. 2, 2011.

---

Linda O. Figueroa, Prescott Valley, Appellant in propria persona.

Thomas C. Horne, Arizona Attorney General By Dawn R. Williams, Assistant Attorney General, Tucson, Attorneys for Appellee Arizona Department of Economic Security.

## OPINION

SWANN, Judge.

¶ 1 Linda O. Figueroa appeals from the denial of her claim for unemployment benefits after the Arizona Department of Economic Security ("ADES") Unemployment Insurance Appeals Board determined that Figueroa left work voluntarily without good cause. Because we conclude that Ms. Figueroa was terminated from her employment, we reverse and remand.

### FACTS AND PROCEDURAL HISTORY

¶ 2 Figueroa was employed for three years as a director of a child-care center operated by Valley Learning Centers. In January 2009, Figueroa became eligible to earn quarterly performance-based bonuses. Although she received bonuses for some periods, Valley refused to give her a bonus following her July 14, 2009 evaluation.

¶ 3 Figueroa separated from employment and applied for unemployment benefits. An ADES deputy interviewed Figueroa and Valley regarding the separation. Figueroa told the deputy that she was upset about her bonus and "advised her supervisor that . . .

she may consider quitting," but she denied ever saying that "she was definitely quitting." Valley told the deputy that Figueroa said if "she did not receive her bonus check by 07/16/09 that she was going to give her notice of quitting." The deputy determined Figueroa was eligible for benefits because

[u]nder these circumstances the burden of proof is placed on the employer to establish a quit. Since this has not been established, it is determined that [Figueroa] was discharged and there is no evidence to show that this discharge [ ] was for misconduct.

¶ 4 Valley appealed. During the resulting hearing before an Appeals Tribunal, Valley asserted that Figueroa "quit."[1] Three Valley employees, including Figueroa's immediate supervisor, testified that Figueroa notified them that she would give notice by the end of the workweek if she did not receive a bonus, and that they hired a locksmith to change the locks at 10 a.m. on July 17. Valley further presented testimony that on July 17, Figueroa orally gave two weeks' notice, but refused to give them the resignation letter she had "in her truck" when Valley asked her to leave immediately.

¶ 5 Figueroa, however, testified that she "was let go." She denied telling anyone that she was quitting or giving notice on July 17. She admitted telling her supervisor and an owner that she was "upset" about the bonus and "need[ed] to think about this," but denied that she ever "used the words, 'I am quitting.'"[2] Figueroa further testified that while she was working on July 17, a locksmith arrived to change the locks, prompting her to call an owner and inquire "what's going on?" Figueroa said her supervisor arrived later and explained she was there to get Figueroa's letter of resignation because Valley "thought you were going to quit."

¶ 6 The Appeals Tribunal determined Figueroa was discharged for reasons other than willful or negligent misconduct in connection with employment, and that she re-

---

1. The testimony in support of the contention was that Figueroa said she quit to her supervisor on July 14 and to an owner on July 15; and that on July 16, Figueroa told her supervisor to call another owner and relay the same message.

2. She testified that her "words were, 'I'm very upset about this. Boy, I really need to think about this.' . . . 'This is not right.'"

mained qualified for benefits. In making its determination, the Tribunal found that Figueroa's statements that she would quit if she did not get a bonus "did not constitute a quit" pursuant to Ariz. Admin. Code ("A.A.C.") R6-3-50135. The Tribunal further found that Figueroa's statements were "ambiguous and conditional and she was simply discussing the possibility of leaving."

¶ 7 Valley timely appealed, explaining it

had no way to know that Ms. Figueroa had no intent to follow through on her threat to quit and felt that we had to ensure the continuation of the operation of business. The sensitivity of Ms. Figueroa's position forced us to act immediately to her statements that she would resign if she was not given her [bonus] by a certain day.

After rejecting the Tribunal's findings of fact, the Appeals Board found *inter alia* that Figueroa had threatened to quit on July 17 if she did not receive a bonus and had informed Valley she had a letter of resignation in her vehicle. Relying on A.A.C. R6-3-50135, the Appeals Board determined that Figueroa left work voluntarily without good cause; it therefore set aside the Tribunal's decision. On review, the Appeals Board affirmed the decision by a two-to-one vote.

¶ 8 Figueroa brought a timely application for appeal, which we granted.

## DISCUSSION

¶ 9 The sole issue is whether Figueroa quit or Valley fired her—an issue that generated conflicting testimony during the Tribunal hearing. While the Tribunal accepted Figueroa's testimony that she was concerned but never quit, the Appeals Board rejected the Tribunal's findings and accepted Valley's version as fact. The Appeals Board is not bound by the Tribunal's findings of fact and has authority to make its own findings regarding factual or credibility issues. *See Rogers v. Ariz. Dep't of Econ. Sec.*, 132 Ariz. 138, 141, 644 P.2d 292, 295 (App.1982). But while we are bound by the Appeals Board's findings of fact unless they are arbitrary, capricious, or an abuse of discretion, "we are free to draw our own legal conclusions in determining [whether] the appeals board

properly interpreted the law." *Munguia v. Dep't of Econ. Sec.*, 159 Ariz. 157, 158–59, 765 P.2d 559, 560–61 (App.1988).

¶ 10 Because Figueroa denied that she voluntarily quit, Valley carried the burden of proof to establish that a quit occurred. *See* A.A.C. R6-3-50190(B)(2)(c); *Calif. Portland Cement Co. v. Ariz. Dep't of Econ. Sec.*, 192 Ariz. 19, 20, ¶ 4, 960 P.2d 65, 66 (App.1998). We therefore consider whether Valley met its burden and whether the evidence supported the Appeals Board's conclusion that Figueroa quit. *See Weller v. Ariz. Dep't of Econ. Sec.*, 176 Ariz. 220, 223, 860 P.2d 487, 490 (App.1993) (finding that the question whether an employer has met its burden of proof is "a question of law freely reviewable by this court"); *Castaneda v. Ariz. Dep't of Econ. Sec.*, 168 Ariz. 491, 494, 815 P.2d 418, 421 (App.1991) (appellate courts may independently determine how the law applies to the facts).

## I. BURDEN OF PROOF

¶ 11 "The burden of proof consists of the requirement to submit evidence of such nature that, taking all other circumstances into account, the facts alleged appear to be true. When this burden is met, the evidence becomes proof." A.A.C. R6-3-50190(B)(1). "The burden of proof rests upon the individual who makes a statement.... If a statement is denied by another party, and not supported by other evidence, it cannot be presumed to be true." A.A.C. R6-3-50190(B)(2).

¶ 12 Figueroa categorically denied that she ever told anyone that she would quit at the end of the week if she did not receive her bonus, but Valley witnesses testified otherwise. The Tribunal heard testimony from three Valley representatives who consistently testified that Figueroa told them she planned to quit July 17 if she did not receive her bonus. Even though Figueroa denied this, the Appeals Board could properly have determined that the Valley witnesses' credibility was greater than hers. We therefore do not reverse on this ground.

## II. FIGUEROA'S STATEMENTS DID NOT CONSTITUTE A "QUIT."

¶ 13 Even taking Valley's version as fact, the testimony of Valley's representatives supported a finding only that Figueroa said she *planned* to quit, and the record is devoid of any evidence that Figueroa took action to end her employment.

¶ 14 A.A.C. R6–3–50135(A)(2) requires ADES to determine whether a separation from employment is a "quit" or a "discharge" by considering "all relevant factors," including the remarks and actions of both parties, who initiated the separation, and the intentions of the parties. A separation from employment is a "quit" when the worker acts to end the employment and intends that result, but it is a "discharge" when the employer acts to end the employment and intends that result. A.A.C. R6–3–50135(A)(1).

¶ 15 Here, the evidence demonstrates that Figueroa never acted to separate from employment. Valley's vice president testified that Figueroa said for three days that July 17 "was the day that she was *going* to give her notice" (emphasis added), but by July 16 she had not done so and Valley was still unclear whether she would. While the vice president also testified that Figueroa orally gave two weeks' notice on July 17, his testimony was that she did so *after* the arrival of the locksmith. Although Figueroa's supervisor confirmed Figueroa's oral notice, she also testified that Figueroa refused to give her a resignation letter because she had "decided that [she] did not want to quit."

¶ 16 Indeed, the record contains significant evidence that Valley acted to cause the separation from employment. The vice president testified that by July 17, Valley had "made plans to replace" Figueroa, even though it "didn't know [if] she was giving us notice." He further explained that "[a]s far as we were concerned [July 17] was her last day," and there was nothing Figueroa could have done to keep her job. Finally, Valley arranged for the locks to be changed on July 17

before Figueroa ever talked to anyone about the status of her job.

¶ 17 On appeal, ADES asserts that Figueroa's statements before July 17 provided "verbal notices of her intent to quit" that she could not later withdraw. *See* A.A.C. R6–3–50135(A)(4) ("When the worker ... gives notice of *intent* to end an employment relationship, later attempts to withdraw the termination do not change the type of separation....") (emphasis added). The Appeals Board did not rely on this reasoning in its decision reversing the Appeals Tribunal. In fact, the Appeals Board's findings clearly stated that prior to July 17 Figueroa only "threatened" to quit if she did not receive her bonus. But a "party's expression of criticism or effort to clarify the position of the other party does not by itself constitute notice of intent to quit or discharge." A.A.C. R6–3–50135(A)(3).

¶ 18 If, as the Appeals Board found, Figueroa gave two weeks' notice on July 17, that might have been sufficient notice of intent to quit. But even accepting that Figueroa actually did give notice on July 17—a fact she denied—Valley's vice president testified that Figueroa gave it *after* the locksmith arrived. The timing of the disputed notice therefore negated any implication that the notice was voluntary.

## CONCLUSION

¶ 19 For the foregoing reasons, we reverse the Appeals Board's determination that Figueroa left work voluntarily without good cause and remand for further proceedings consistent with this opinion.

CONCURRING: PATRICK IRVINE and MAURICE PORTLEY, Judges.