PER CURIAM.
Jim Skinner Ford, Inc., and the Department of Industrial Relations (“DIR”) separately appeal from the circuit court’s judgment determining that John H. Davis did not voluntarily quit his employment and that he is entitled to unemployment-compensation benefits. We affirm.
Following the separation of his employment from Jim Skinner Ford, Davis applied with DIR for unemployment-compensation benefits. Davis was granted benefits, and Jim Skinner Ford appealed that decision to DIR’s Hearings and Appeals Division. Jim Skinner Ford asserted that Davis was disqualified from benefits because, it said, he voluntarily quit his *665 employment without good cause. Following a telephone hearing, a hearing officer concluded that Davis was not entitled to benefits. Davis appealed that decision to the DIR’s Board of Appeals, which affirmed the decision to deny him benefits. Davis then appealed to the circuit court for a trial de novo, pursuant to § 25-4-95, Ala.Code 1975.
At trial, the parties disputed whether Davis had voluntarily quit his employment or whether Jim Skinner Ford had dismissed him. Section 25-4-78(2), Ala.Code 1975, provides for the disqualification of unemployment-compensation benefits if a claimant leaves work “voluntarily without good cause connected with such work.” The circuit court concluded that Jim Skinner Ford, as the employer, bore the burden of proving that Davis had voluntarily quit his employment. After hearing ore tenus testimony, the circuit court determined that Davis had not voluntarily quit his employment. Accordingly, because the parties did not otherwise dispute Davis’s eligibility for unemployment-compensation benefits, the circuit court concluded that Davis was entitled to benefits. Jim Skinner Ford and DIR appealed to this court, and we consolidated the appeals.
On appeal, Jim Skinner Ford and DIR first argue that the circuit court erred in concluding that Jim Skinner Ford, as the employer, bore the burden of proving that Davis was disqualified from unemployment-compensation benefits for voluntarily quitting work. In concluding that Jim Skinner Ford bore this burden, the circuit court relied on our supreme court’s recent decision in Ex parte Rogers, 68 So.Bd 773 (Ala.2010). In Ex parte Rogers, the employer alleged that the claimant was disqualified from benefits under § 25^1-78(3), Ala.Code 1975, which disqualifies a claimant for misconduct. In that case, the specific issue under review was whether the “claimant has the burden of proving the absence of a disqualification for misconduct.” 68 So.3d at 773-74. Our supreme court answered that question in the negative, concluding that “the employer has the burden of proving that the employee is disqualified [from receiving unemployment compensation] for reasons of misconduct.” 68 So.3d at 781.
Jim Skinner Ford and DIR argue that Ex parte Rogers applies only to the burden of proof applicable under § 25-4-78(3), which concerns disqualification for misconduct, and does not apply to the provision in this case, § 25-4-78(2), which concerns disqualification for voluntarily quitting work. In Ex parte Rogers, the supreme court emphasized the distinction between the eligibility provisions of § 25-4-77 and the disqualification provisions of § 25-4-78. Neither of those sections address the allocation of the burden of proof. Our caselaw is clear that a claimant has the burden of proving eligibility; however, the burden regarding disqualification has not been as clear. In addressing the disqualification provisions, the supreme court, in addition to quoting from the provision in § 25-4-78(3) concerning misconduct, also quoted part of the subsection at issue here, § 25-4-78(2), as well as § 25-4-78(1), which concerns a “labor dispute in place of employment.” The court then addressed certain Alabama cases that suggested that the employee bears the burden of establishing the absence of a disqualification for misconduct. The court observed that “those cases do not address, or even acknowledge, any distinctions as to the burden of proving eligibility, disqualifying circumstances, and justifications or excuses for what would otherwise be disqualifying circumstances.” 68 So.3d at 778. The court then cited a contrary line of Alabama cases that places on the employer the burden of proof as to whether a claimant is disqualified from receiving benefits under § 25-4-78(1) because the claimant’s unem *666 ployment is directly due to a labor dispute. The court stated that it had not located any cases attempting to reconcile the two lines of cases “or to make a principled distinction among disqualifications under the various subsections of § 25-4-78.” 68 So.3d at 779.
The supreme court in Ex parte Rogers next observed that “Alabama’s position on the burden of proof for disqualification is contrary to the approach adopted by most or all the other states” that have addressed the issue. 68 So.3d at 779. The court generally noted that many eases from other jurisdictions “recognize that placing the burden of proving a disqualification on the employer has the advantage of imposing the burden of proof on the party that generally has better access to the relevant evidence.” Id. (emphasis added). The court then broadly observed:
“Imposing on the employer the burden of proof as to a claimant’s disqualification for unemployment-compensation purposes is consistent with the general principle that the proponent of an affirmative defense or similar position has the burden of proof as to that position as well as with the disinclination of the law to place upon a party the burden to prove a negative.”
68 So.3d at 780. The supreme court further stated, in broad terms:
■ “Finally, to the extent that, after considering all the foregoing, any uncertainty remains as to who should bear the burden of proving the existence of a disqualifying condition, we note that the ‘Unemployment Compensation Act is in the nature of insurance for the unemployed worker and is intended to be a remedial measure for his benefit [and] should be liberally construed in favor of the claimant and the disqualifications from benefits should be construed narrowly.’ [Department of Indus. Relations v.] Jaco, 337 So.2d [374,] 376 [ (AIa.Civ.App.1976) (overruled on other grounds by Ex parte Rogers) ]. See also Ex parte Sargent, 634 So.2d 1008, 1009 (Ala.1993) (‘Disqualification provisions in the Unemployment Compensation Act should be narrowly construed.’).”
68 So.3d at 780-81. (emphasis added). The supreme court then concluded that the employer in Ex parte Rogers had the burden of proving that the employee is disqualified for misconduct, the particular basis for disqualification at issue in that case.
Based on the reasoning and sweeping language of Ex parte Rogers, we conclude that that case indicates that the employer has the burden of proving that a claimant is disqualified from receiving unemployment-compensation benefits because the claimant voluntarily quit work, pursuant to § 25-4-78(2). DIR and Jim Skinner Ford argue that this cases is not controlled by Ex parte Rogers but by certain older Alabama cases. Several of those cases are factually distinguishable from this case in that they concern whether the claimant had “good cause” when it is clear that he or she had left work voluntarily. See An-dala Co. v. Ganus, 269 Ala. 571, 115 So.2d 123 (1959);- McNealey v. State Dep’t of Indus. Relations, 664 So.2d 913 (Ala.Civ. App.1995); Nowell v. Mobile Cnty. Health Dep’t, 501 So.2d 468 (Ala.Civ.App.1986); Davis v. Haggle, 392 So.2d 1190 (Ala.Civ. App.1980); Department of Indus. Relations v. Meeks, 40 AIa.App. 231, 110 So.2d 643 (1959); and Morrison v. Department of Indus. Relations, 35 Ala.App. 475, 48 So.2d 72 (1950). The following is indicative of the allocation of the burden as stated in those cases: “When the evidence shows that a claimant left his or her employment voluntarily, claimant has the burden of showing good cause connected with such work for leaving.” Department of Indus. Relations v. Meeks, 40 Ala.App. at 233, 110 So.2d at 645. However, in this *667 case, Davis did not argue that he voluntarily left work but had a good cause for doing so; rather, he argued that he did not quit but was fired. That is, the issue concerns the first consideration in § 25-4-78(2)— whether the employee voluntarily quit— and not the second consideration — whether there was good cause for quitting. Thus, we do not read the cases above as indicating that the claimant bears the burden of initially proving that he or she did not voluntarily quit. Therefore, those cases are inapplicable here, and we need not discuss those cases in light Ex parte Rogers.
Two of the cases cited by DIR and Jim Skinner Ford, Tolin v. Director, Department of Industrial Relations, 775 So.2d 887 (Ala.Civ.App.2000), and Alabama Power Co. v. Atkins, 36 Ala.App. 558, 60 So.2d 858 (1952), concerned the issue in this case — whether an employee quit or was fired. In Tolin, this court stated that “[a]n employment-compensation claimant who voluntarily leaves her job and then seeks to avoid disqualification bears the burden of showing that she left her job for ‘good cause’ not connected with her work.” 775 So.2d at 839. Tolin did not state that a claimant has the burden of proving that he or she did not voluntarily quit in the first instance. Thus, we do not read that case as conflicting with the reasoning in this case. In Alabama Power Co. the court noted that “[t]he burden of proof was cast on the claimant to establish his right to the unemployment compensation.” 36 Ala.App. at 559, 60 So.2d at 859. Insofar as that case may be read as placing a burden on the claimant to prove that he or she did not voluntarily quit, it is overruled.
Jim Skinner Ford and DIR next argue that the circuit court erred in determining that Davis did not voluntarily quit his employment. As noted, § 25-4-78(2) provides for the disqualification from receiving unemployment-compensation benefits if a claimant leaves work voluntarily without good cause connected with such work. The issue is simply whether Davis voluntarily quit. DIR and Jim Skinner Ford argue that Davis voluntarily quit, and Davis argues that he did not. Davis does not argue that he quit but had a “good cause” for doing so.
The record on appeal does not contain a transcript of the trial. However, there appears to be little dispute over the essential facts of the case, which the circuit court summarized in its judgment:
“Davis was first employed by [Jim] Skinner [Ford, an automotive dealership,] in 1963 and worked there until September of 2009. He was assigned the position of Fleet Manager around 1969. Davis testified that he had an employment contract but it was never offered into evidence and the court heard of no rules concerning resignation, employment, or termination procedures. In the absence of such proof, the Court concludes that Davis was an employee at will.
“Davis’ position was quite profitable and he was paid well into the six figures. He received 36% of the fleet profits as his compensation, along with the use of two vehicles with fuel expenses, and $1050 a month. He was well paid for his work.
“Davis testified that there were only two employees in the Fleet Department when he left on his June 2009 vacation. The other employee [was] Shannon Dickerson, [who] ... worked under Davis’ supervision.
“Davis’ testimony is that when he returned from his June vacation, he found that a new office manager/comptroller, Latoshas Mack, had been hired. Jimmy and Bobby Skinner[, the owners of Jim Skinner Ford,] had placed her in charge *668 of all employees, including Davis and Dickerson.
“During Davis’ absence, Ms. Mack arrived and investigated the Fleet Department. Without even talking to Davis, she decided that the department was in need of immediate modernization. The extensive paper work was done on typewriter and not computers. When Davis returned he found his department was in transition and he met with Mack to find out what was happening. He requested that the transition be place[d] on hold or phased in to allow him and Dickerson to complete the filing of a $5.5 million ... contract with the City of Birmingham, which was due by the end of July. Mack refused to grant any of Davis’ requests, leading to Davis appealing to Bobby Skinner. He told Davis that Mack’s decisions were not to be questioned and if his complaints involved Mack, there was nothing for them to discuss.
“As Davis was completing the filings for the $5.5 million deal in the end of July, Mack eliminated Dickerson’s flex hour privileges. This further frustrated Davis because it disturbed his assistant who had relied on that system because of child care issues. After another unsatisfactory meeting with Mack, Davis again appealed to Bobby Skinner, complaining that Mack lacked experience and understanding of the fleet operation. He sought a meeting with John Galese[, Jim Skinner Ford’s attorney]. In making his repeated appeals throughout July and August, Davis threatened to resign if the owners would not meet to discuss the changes.
“Ms. Dickerson testified that during that time, Davis twice mentioned that he had resigned, but that she had never seen a document indicating that he quit. He did not behave as if he had resigned or been fired, and did not pack his belongings nor stop his work.
“Galese testified that Davis had called him via phone and resigned during the course of their conversation due to difficulties with Mrs. Mack. Galese testified that he and the Skinners met with Davis in August. At that meeting Davis threatened to resign if the issues regarding Ms. Mack’s changes were not addressed. He was told that his resignation would be accepted if it was offered and Davis responded by saying that he would get back to them.
“Finally, in late August, Galese called Davis into a meeting and told him that his resignation had been accepted. Davis said [‘]okay[’] and that he would stay around long enough to collect the money due the dealership from the City of Birmingham. He then walked out.
“Davis testified that it was never his intent to resign and that his threat to resign in the August meeting was only a bargaining chip. His response to Galese when he said ‘okay’ was the direct result of his being caught completely off-guard.
“Galese testified that during the August meeting, the Skinners and he discussed whether to do anything to retain Davis’ employment, but decided against it. The record shows they decided to accept Davis’ ‘resignation.’ In the late August meeting, and again in the September 3, 2009, meeting, Galese told Davis that his resignation had been accepted. During the September 3, 2009 meeting, which was recorded and entered into evidence ... Galese accepted Davis’ resignation a second time.
“Galese testified that he and the Skinners did not ask Davis to sign a resignation letter, although he admitted that it would have been a good idea. Galese testified that he was not an agent of Jim Skinner Ford, that he did not have authority to sign documents on behalf of [Jim] Skinner [Ford], but that he accept *669 ed Mr. Davis’ resignation. It is undisputed that Davis neither signed nor submitted a written resignation and began cleaning out his office in September of 2009.”
Based on that evidence, the circuit court found
“that the employer has failed to reasonably satisfy the court that Davis voluntarily left his employment. The Court is convinced that what happened is that [Jim] Skinner [Ford] sought greater profitability from Davis’ department and concluded that he was making too much money. [Jim] Skinner [Ford] conveniently misconstrued his threat of resignation as a binding, voluntary resignation, in order to achieve its ends.
“Davis’ earnings were far beyond the norm and [Jim] Skinner [Ford] was aware of that before his threat to resign. The evidence is that Ms. Dickerson now makes 20% and 25% of profits from the fleet operation, far less than Davis was making. Davis’ threat to resign was just a bargaining tool. Testimony shows that Galese cannot accept resignations at Skinner and Skinner’s failure to obtain a written resignation. The evidence that there were multiple resignation ac-eeptances[ ] help satisfy the Court that Davis did not voluntarily offer a resignation.
“Insofar as the evidence shows, Davis was an employee-at-will and Skinner had a legal right under Alabama employment law to terminate his employment for any reason whatsoever, regardless of his many years of faithful service.
[[Image here]]
“The Skinners exercised that right to terminate Mr. Davis’ employment. He was fired.”
Our standard of review in this ease is as follows:
“Where evidence is presented to the trial court ore terms, we presume that the court’s conclusions on issues of fact are correct, and we will not disturb them unless they are clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence. However, when the trial court improperly applies the law to the facts, no presumption of correctness attaches to the court’s judgment.”
Ex parte Lamar Advertising Co., 849 So.2d 928, 929-30 (Ala.2002) (citations omitted).
“The Unemployment Compensation Act is ‘insurance for the unemployed worker and is intended to be a remedial measure for his benefit.’ Department of Industrial Relations v. Jaco, 337 So.2d 374, 376 (Ala.Civ.App.1976) [ (overruled on other grounds by Ex parte Rogers, 68 So.3d 773 (Ala.2010)) ]. ‘It should be liberally construed in [the] claimant’s favor and the disqualifications from benefits should be narrowly construed.’ Department of Industrial Relations v. Smith, 360 So.2d 726, 727 (Ala.Civ.App.), cert, den., 360 So.2d 728 (Ala.1978).”
State Dep’t of Indus. Relations v. Bryant, 697 So.2d 469, 470 (Ala.Civ.App.1997).
“The word ‘voluntary’ is not defined in Ala.Code 1975, § 25^1-78. ‘The rules of statutory, construction require that the words used in a statute be given their plain, natural, ordinary, and commonly understood meaning.’ Ex Parte New England Mutual Life Ins. Co., 663 So.2d 952, 955 (Ala.1995) (citing Alabama Farm Bureau Mutual Casualty [Insurance ] Co. v. City of Hartselle, 460 So .2d 1219,1224 (AJa.1984)). The word ‘voluntary’ implies the making of a decision by one’s own accord or choice. ‘Voluntary’ is defined as ‘[Resulting from free choice, without compulsion or solicitation.’ Black’s Law Dictionary 1575 (6th ed.1990).”
*670 Director, Dep’t of Indus. Relations v. Ford, 700 So.2d 1388, 1390 (Ala.Civ.App. 1997).
Although we can find no Alabama case directly on point, a recent case from Arizona is informative. In Figueroa v. Arizona Department of Economic Security, 227 Ariz. 548, 260 P.3d 1113 (Ariz.Ct.App. 2011), the Court of Appeals of Arizona considered whether an employee had voluntarily quit her employment for unemployment-compensation purposes. In that case, the employee alleged that she became “upset about [not receiving a] bonus and ‘advised her supervisor that ... she may consider quitting,’ but she denied ever saying that ‘she was definitely quitting.’ ” 227 Ariz. at 549, 260 P.3d at 1114. The employer alleged that the employee “said if ‘she did not receive her bonus cheek by [that Thursday] that she was going to give her notice of quitting.’ ” Id. Three other employees testified that the employee notified them that she would give her notice by the end of the workweek if she did not receive her bonus. The employee did not receive a bonus. That Friday, the employer began to change the locks on the doors and asked the employee to leave. Id.
The court concluded that the facts “supported a finding only that [the employee] said she planned to quit.” 227 Ariz. at 551, 260 P.3d at 1116. The court further concluded that the employee never actually acted to separate from employment. Instead, the record indicated that the employer had acted to cause the separation from the employment. Thus, the court concluded that the employee did not quit her employment. Id.
Similarly, in this case, the evidence supports the circuit court’s finding that Davis did not voluntarily quit his employment. The circuit court noted that Galese, the attorney for Jim Skinner Ford, testified that Davis “resigned” to him during two telephone conversations. However, the circuit court also observed that Galese “cannot accept resignations” on behalf of Jim Skinner Ford. Apparently after the telephone conversations, Davis had a meeting with Galese and the Skinners at which he threatened to resign if certain of his concerns were not addressed. When Davis was told that his resignation would be accepted if it were offered, Davis indicated that “he would get back to them.” However, Davis did not offer his resignation, and the circuit court found credible his explanation that he used his threat to resign as simply a bargaining chip. Thus, when Jim Skinner Ford purported to later “accept” Davis’s resignation offer, there was no resignation offer on the table to accept. Based on these facts, Davis’s separation from his employment was not the result of his “free choice.” Ford, supra. That is, he did not voluntarily quit but was instead discharged.
We recognize that there was some evidence suggesting that Davis had in fact voluntarily quit. In particular, Dickerson, who worked under Davis, testified that Davis twice mentioned that he “had resigned.” However, the circuit court evidently assigned little weight to that testimony, noting that at the time Davis “did not behave as if he had resigned or been fired, and did not pack his belongings nor stop his work.” It was within the circuit court’s province “to assign such weight to various aspects of the evidence as it may have deemed appropriate.” Miller v. Associated Gulf Land Corp., 941 So.2d 982, 990 (Ala.Civ.App.2005). By acting as if he had not resigned even after telling a coworker that he had “resigned,” Davis’s behavior was consistent with someone using the threat of resignation as a “bargaining chip.”
In conclusion, we hold that the employer has the burden of proving that a claimant is disqualified from unemployment-com *671 pensation benefits on the basis that the claimant voluntarily quit work. We affirm the circuit court’s judgment determining that Davis did not voluntarily quit his employment. Our decision pretermits Jim Skinner Ford’s argument that, if Davis did in fact quit his employment, he did so without good cause.
2110859 — AFFIRMED.
2110868 — AFFIRMED.
All the judges concur.