NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

BRIAN MONTALBANO, *Appellant*,

*v.*

ARIZONA DEPARTMENT OF ECONOMIC SECURITY, an Agency,

*and*

ADRENALINE TRAILER REPAIR & SERVICES, *Appellees*.

No. 1 CA-UB 22-0510
FILED 3-5-2024

Appeal from the A.D.E.S. Appeals Board
No.  U-1814752-001-B

**REVERSED**

COUNSEL

Lindsey W. Hunter & Associates, Tempe
By David J. Keys-Nunes
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Jennifer R. Blum
*Counsel for Appellee Arizona Department of Economic Security*

Adrenaline Trailer Repair & Services, Lake Havasu City
*Appellee*

---

**MEMORANDUM DECISION**

Judge Kent E. Cattani delivered the decision of the Court, in which Presiding Judge Jennifer B. Campbell and Judge Annie Hill Foster joined.

---

**C A T T A N I**, Judge:

¶1        Brian Montalbano appeals from a final administrative decision denying his request for unemployment benefits on the basis that he had engaged in disqualifying misconduct.  We reverse.  Although Montalbano's employer was entitled to fire him, the record does not establish that Montalbano's acts constituted the type of misconduct that disqualifies an employee from obtaining unemployment benefits.

## FACTS AND PROCEDURAL BACKGROUND

¶2        Montalbano worked as a paint technician for employer HRM Unlimited LLC dba Adrenaline Trailer Repair & Services.  In September 2021, Montalbano's employer spoke with him about changing from salary to hourly wages because of how much time he had been missing from work for personal reasons.  Believing a co-worker had complained to the manager about his absences, Montalbano sent the co-worker the following text message (names redacted; errors in original):

> G[ ] says your talking shit. Whats the deal? Do i run to w[ ] all day when your in the drivway smoking cigs? Thats some punk ass bullshit..we will be talking soon.  I spend 2 years trying to fix all the adrenaline issues for you to come and talk shit on me? Your a bitch. I asked you before if you have a issues say so. Whats the deal? Man up face to face if you have an issue. Instead you make up bullshit to get ahead like a bitch..

The co-worker forwarded the text message to the manager, and the manager called Montalbano and fired him.

¶3        Montalbano applied for unemployment benefits, stating he had been discharged for attendance issues.  The employer informed the Arizona Department of Economic Security ("ADES") that Montalbano had been discharged for "Failure to show up for work without notice and insubordination on several occasions," adding that Montalbano "lost his

temper[] and exploded" and "contacted several coworkers and threatened them" as part of the final incident leading to termination. From this information, an ADES deputy determined Montalbano had been discharged for misconduct and was therefore disqualified for benefits, specifically noting that Montalbano was fired for "being verbally abusive to another employee" or "us[ing] profanity in [the] work environment."

¶4 Montalbano appealed, and both he and a company manager testified at the resulting evidentiary hearing before the Appeal Tribunal. The manager testified that the text message, which he construed as a threat against a fellow employee, was his sole reason for firing Montalbano. The manager emphasized (contrary to the information previously provided to ADES) that Montalbano's attendance issues were not a basis for his termination. The manager also testified that other employees felt threatened by Montalbano, but he acknowledged he did not learn about that until after Montalbano was fired, making it irrelevant to the reason for termination.

¶5 For his part, Montalbano confirmed that he sent the text message, but he denied that it was a threat and highlighted that it was sent after hours (and thus, in his view, could not violate a policy regarding profanity at work). Finding that Montalbano had used "foul language and threatening language" despite "previously be[ing] warned" against using profanity, the Tribunal concluded Montalbano had been discharged for work-related misconduct and was thus disqualified from receiving benefits. After Montalbano petitioned for review, the Appeals Board adopted the Tribunal's findings and conclusions without modification.

¶6 We granted Montalbano's application for appeal under A.R.S. § 41-1993(B) and appointed *pro bono* counsel for Montalbano. ADES participated in this appeal, but the employer did not appear.

## DISCUSSION

¶7 Montalbano contests the Appeal Board's finding that his actions rose to the level of benefit-disqualifying misconduct.[1] On review,

---

[1] Preliminarily, ADES asserts that Montalbano failed to raise this issue in his petition for review before the Appeals Board and that this court thus lacks jurisdiction to consider it. *See* A.R.S. § 41-1993(B); *see also Barriga v. Ariz. Dep't of Econ. Sec.*, 541 P.3d 1159, 1166, ¶ 27 (Ariz. 2024). Although broadly stated (and accompanied by other allegations), Montalbano's

we defer to the Appeals Board's findings of fact unless they are arbitrary, capricious, or an abuse of discretion, and we are thus bound by the Board's factual findings provided substantial evidence supports them. *Munguia v. Dep't of Econ. Sec.*, 159 Ariz. 157, 158–59 (App. 1988); *Rice v. Ariz. Dep't of Econ. Sec.*, 183 Ariz. 199, 201 (App. 1995). We draw our own legal conclusions from those facts, however, and owe no deference to the Board's interpretation of the law. *Figueroa v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 548, 550, ¶ 9 (App. 2011); *Prebula v. Ariz. Dep't of Econ. Sec.*, 138 Ariz. 26, 30 (App. 1983).

**¶8**     A person is disqualified from receiving unemployment benefits if discharged for "wilful or negligent misconduct connected with the employment." A.R.S. § 23-775(2). To be disqualifying, such misconduct must breach the employee's obligations to the employer or adversely affect the employer's substantial interest. A.R.S. § 23-619.01(A); Ariz. Admin. Code ("A.A.C.") R6-3-5105(A); *see also* A.A.C. R6-3-5185(B) (off-duty misconduct may be disqualifying if it "bears such a relationship to [the] job" that it causes an "adverse [e]ffect" on operations, rendering the employee "unsuitable to continue in [the] job"). Misconduct justifying termination of employment and misconduct justifying disqualification for unemployment benefits are thus "two distinct concepts," *Weller v. Ariz. Dep't of Econ. Sec.*, 176 Ariz. 220, 223 (App. 1993), and the employer has the burden to prove that the misconduct justifying discharge was indeed disqualifying, A.A.C. R6-3-51190(B)(2)(b).

**¶9**     Intemperate relations with a co-worker may, in certain circumstances, constitute disqualifying misconduct. *See* A.R.S. § 23-619.01(B)(5); A.A.C. R6-3-51390. But mere "[t]emperamental inability to get along" does not suffice unless manifested in an "overt act" that "could impair the efficiency of operations" or otherwise harm the employer's interests. A.A.C. R6-3-51390(A). And depending on the nature of the employment, use of abusive or profane language between co-workers may — or may not — be misconduct. A.A.C. R6-3-51390(B)(1)–(2). Use of "mildly abusive and profane language" at workplaces where such language is the norm is not misconduct unless "used in such a belligerent or vociferous manner that there is interference with good order and discipline." A.A.C. R6-3-51390(B)(2). And while "repeated and inappropriate use of abusive language" is disqualifying, A.R.S. § 23-

---

petition contested the existence of misconduct and any connection to the workplace. This contention adequately raised the issue of whether Montalbano's conduct justified disqualification for benefits and thus preserved his challenge to the Appeals Board's decision.

619.01(B)(5), "occasional" profanity is not misconduct unless it prompts "dissatisfaction and discord among employees" and the employer "previously warned against its use," A.A.C. R6-3-51390(B)(3).

¶10        Here, the Appeals Board adopted the Appeal Tribunal's findings and reasoning that Montalbano's text message contained "foul" and "threatening" language against which Montalbano had previously been warned, all in derogation of the employer's interests. But the record does not bear out critical aspects of these findings and reasoning.

¶11        First, although there was no dispute that Montalbano's text message included "foul" or profane language, there was no evidence of "*repeated*" profanity or abusive language. *See* A.R.S. § 23-619.01(B)(5) (emphasis added). There was likewise no evidence that Montalbano had ever received a specific, individualized warning about inappropriate language; the manager confirmed as much, testifying only that Montalbano had been informed of the general company policy against using profanity at work. *Compare* A.A.C. R6-3-51390(B)(3) (discharge based on profanity disqualifying if "the employer had previously *warned* against its use") (emphasis added), *with* (D)(2) (discharge due to bickering disqualifying if culprit "has been made aware *through general rules or warnings*" to avoid or stop such actions) (emphasis added). And the company policy did not prohibit coarse language between co-workers generally, but rather was targeted at avoiding profanity around customers or female employees—and neither such circumstance was implicated here. *See* A.A.C. R6-3-51390(B)(2). The profane language Montalbano used in the text message to his co-worker was inappropriate (and his employer could fire him for it), but it was not the type of repeated, previously warned-against misconduct that would disqualify him from receiving unemployment benefits. *See Weller*, 176 Ariz. at 223.

¶12        Second, contrary to the Board's finding, Montalbano's text message did not contain "threatening" language that interfered unduly with the employer's business. The ostensibly "threatening" language was simply this: "we will be talking soon." A "threat" to talk is generally not so inherently disruptive or vociferously belligerent as to constitute disqualifying misconduct. *See* A.A.C. R6-3-51390(B)(2). At most, Montalbano's single, isolated text message—profanity and all—established only a "[t]emperamental inability to get along" with his co-worker and an intention to resolve the issue through verbal communication. *See* A.A.C. R6-3-51390(A). Moreover, although the co-worker who received the text message was present at the Tribunal hearing, the employer did not have him testify about any subjective understanding that he perceived the text

message as threatening. Without such testimony (or other comparable evidence), the employer failed to prove that Montalbano's "threat" to talk concealed some genuinely threatening subtext or otherwise interfered with the employer's interests. *See id.*; *see also* A.A.C. R6-3-51190(B)(2)(b) (employer's burden to prove discharge resulted from a disqualifying reason). Accordingly, the employer here did not meet its burden of establishing the type of misconduct that warrants denial of unemployment benefits. *See* A.A.C. R6-3-51390(A)–(B).

## CONCLUSION

¶13   We reverse the Appeals Board's decision and remand with directions to award Montalbano the benefits to which he is entitled.



AMY M. WOOD • Clerk of the Court
FILED: AA